SPRAGUE v. MOORE.

1. ESTATES OF DECEDENTS — ADVANCEMENTS — LOANS — PRESUMPTION.
    In the absence of any declaration to the contrary, it will be presumed that money paid to a son, for which he gives to the ancestor a promissory note, is a loan, and not an advancement.

2. SAME—DECLARATIONS IN WILLS AND DEEDS OF TRUST.
    Moneys paid to an heir, for which promissory notes are given to the ancestor, may be shown to be an advancement by subsequent declarations of the ancestor in deeds of trust or wills.

3. SAME—DEED OF TRUST—ACCOMMODATION PAPER.

Moneys paid to an heir, and for which promissory notes were taken, as well as money paid to take up accommodation paper upon which the ancestor was an indorser, are not shown to be advancements by a deed of trust of all the ancestor's property, stipulating that, at her death, the property should be distributed equally among her heirs, and that the estate, for the purpose of distribution, should consist, not only of the property that came into the trustee's hands, but also of all advances made to each of her children, all debts due from them to her or to her trustee, and all payments made by her or her trustee for the benefit of each of them, and also directing the trustee to pay all accommodation paper theretofore made and which the heir ought to pay, and charge the same, with interest, to his share of the estate.

4. SAME—INTEREST ON ADVANCEMENTS.

For the purpose of equalizing shares on the distribution of an estate, interest should be computed on advancements from the death of the ancestor, but not before, unless there is some provision in the acknowledgment or declaration of the advacement requiring it.

5. SAME—CONSTRUCTION OF TRUST DEED.

A woman, having made advancements to some of her children, made a trust deed of all her property, providing that the trustee might advance to each of her children $1,000 per year, and that any sum withheld from a minor grandchild should be equalized at the termination of the trust, if not before, and that at her death the estate should be distributed equally among her heirs. She expressed a desire that all should "share equally and ratably in all past, present, and future benefits." The deed contained no specific provision as to interest. *Held,* that all beneficiaries should share equally from the time the deed was made; that advances made after that time should bear interest, and that those made before should not.

6. DESCENT AND DISTRIBUTION OF ESTATES—ADMINISTRATOR.

Where one of eight children, who receive vested interests in their mother's property by virtue of a trust deed, dies before her mother, leaving no debts or issue, her interest in the property goes equally to her brothers and sisters, under 3 Comp. Laws, §§ 9064, 9322, and no administrator is necessary for the distribution of her estate.

7. UNNECESSARY ADMINISTRATION—COSTS.

Where a person asks for the appointment of an administrator

of an estate when such appointment is wholly unnecessary, he will be left to pay his own costs and disbursements in such proceedings.

8. TRUSTEE—PURCHASE OF INTEREST OF BENEFICIARY.

A beneficiary may assign his interest in the trust estate to the trustee to secure the trust estate and also the personal interest of the trustee; but the latter's interest will be second to that of the trust estate.

Appeal from Wàyne; Brooke, J. Submitted January 8, 1902. (Docket No. 22.) Decided March 18, 1902.

Bill by Thomas S. Sprague against Irene Sprague Moore, as trustee, Irene Sprague Moore, as general guardian of the estate and effects of Gracie Deats, a minor, Irene Sprague Moore, Rollin C. Sprague, George H. Sprague, Mary A. Stofflet, Ida L. Taylor, Gracie Deats, Thomas S. Sprague, as administrator of the estate of Amelia L. Sprague, deceased, and Thomas S. Sprague, as administrator of the estate of Adeline L. Sprague, deceased, for an accounting. From the decree rendered, defendants Irene Sprague Moore, as trustee, as guardian, and individually, Gracie Deats, and Thomas S. Sprague, as administrator of the estate of Amelia L. Sprague, deceased, appeal. Modified.

*George W. Radford,* for complainant.

*William J. Gray,* for defendant Rollin C. Sprague.

*Moore & Moore,* for other defendants.

HOOKER, C. J. In the year 1876 Mrs. Adeline L. Sprague was possessed of a large fortune. She had then eight children, all of whom are now living, except Amelia, who died intestate and unmarried in 1892, and Hattie, who died in 1889, prior to the execution of the trust deed in question, leaving one child, Gracie Deats, who is represented by Irene Sprague Moore, her guardian. Mrs. Sprague began to make advances of money to her children in 1876, and these advances continued in various amounts

to the several children until she executed a trust deed to Irene Sprague Moore in 1889. There was considerable inequality in the advancements prior to July 1, 1879. After that date, and until the trust deed was made, each of six children (Irene and Amelia not being included) received substantially $600 a year. Mrs. Moore received nothing, and Amelia received only her maintenance, said to be worth about $200 per year. A uniform practice was not followed for the whole period by Mrs. Sprague in taking acknowledgment for payments. No vouchers are shown to have been taken for some of them. Upon other occasions receipts as for advancements were taken, and this was the uniform custom after June, 1880. Before and after that date notes were taken, varying in form, and payable at different periods.

On April 22, 1889, Adeline L. Sprague made the trust deed mentioned of all her property to her daughter Irene Sprague Moore, as trustee, for the benefit of her seven living children and one grandchild, viz., Amelia L. Sprague, Irene Sprague Moore, Rollin C. Sprague, George H. Sprague, Mary A. Stofflet, Ida L. Taylor, Thomas S. Sprague, and Gracie Deats, the daughter of Hattie Sprague, deceased. A separate instrument gives the terms of the trust. It provides that Mrs. Moore shall:

1. Manage the property.

2. Pay (*a*) the expenses of the trust; (*b*) the mother's debts on which she is liable as principal; (*c*) "also all indebtedness which she is or may become liable to pay, whether as surety, indorser, or maker of any promissory notes or other obligations now existing, made or incurred for the accommodation or benefit of others, and which such others should, or of right ought to, pay."

3. Out of the income (*a*) support the mother; (*b*) pay funeral expenses, etc.; (*c*) out of the remaining income "the trustee, in her discretion, may pay to each of the beneficiaries and to all of full age, alike, annually, a sum not exceeding one thousand dollars per year; and any sum withheld from the minor beneficiary, Gracie Deats, shall be equalized at, if not before, the termination of the trust."

4. It names the beneficiaries, and provides that: "It is my desire, and the purpose of this trust, that they shall share equally and ratably in all past, present, and future benefits ·received from me and my estate, including said trust estate. I therefore direct that, as soon as practicable after my death, said trustee shall proceed to the distribution of the trust estate among all of said persons as if she was executor and this was my last will."

5. It provides that: (*a*) "Obligations heretofore entered into for the benefit of any of said beneficiaries, and hereafter paid by said trustee, shall bear interest at six per cent. per annum, and be charged to such beneficiary's share." (*b*) "Should any of said beneficiaries die before me, his or her share shall be paid to his or her estate for distribution according to the laws of Michigan."

6. A subsequent statement of advances was made, showing the date and amount each child. had received, and this statement contained the following clause: "And for the purpose of enabling the trust to be fulfilled without uncertainty or conflict of right, I hereby now relinquish and assign to said trustee, for the purposes of said trust as expressed in said trust instrument, all rights reserved by me under said paragraph seven, said paragraph having now been fulfilled by this declaration."

The record shows the date and amount of each item of money received by the different children, and the character of the note or receipt given at the time. After the creation of the trust, Amelia continued to receive her maintenance until 1892. Thomas was paid nothing, but was credited upon his indebtedness the same amount as was paid to others, who received substantially the same sum yearly, excepting Gracie Deats,—to whom a large sum was given in 1896 to equalize her share with others,—and Irene, who has been paid nothing.

Amelia L. Sprague died January 13, 1892. Adeline L. Sprague died May 1, 1899, after which this bill was filed by Thomas S. Sprague for an accounting. One phase of the cause has been before this court, and will be found in 125 Mich. 357 (84 N. W. 293). Subsequently proofs were taken in the circuit court, and a decree was made, from which several of the parties have appealed, viz., Gracie

Deats, Irene Sprague Moore, in her own right, and also as trustee and guardian, and Thomas S. Sprague, as administrator of Amelia.

Thomas S. Sprague has not appealed except in the capacity of administrator, and makes but one objection to the decree, and that is that it should have directed the payment of the share of Amelia to her administrator for administration and distribution under the probate laws. The decree provides that:

"It is further ordered, adjudged, and decreed that said beneficiary Amelia L. Sprague became vested of her interest in said estate upon the execution and delivery of said trust deed; that she died prior to the death of Adeline L. Sprague, to wit, on January 13, 1892, and her interest immediately became vested in the other seven beneficiaries named in said trust instrument, subject to the claims of the creditors of said Amelia L. Sprague, said vested interest to be paid at the period of distribution. But it appearing to this court from the evidence that Amelia L. Sprague left no debts, it is therefore ordered, adjudged, and decreed that each of said beneficiaries shall receive one-seventh of Amelia's share of said trust estate, which shall be ascertained separate and distinct from the shares to which the other beneficiaries are entitled in said trust estate; and it appearing from the evidence that Thomas S. Sprague has made a good and valid assignment of his interest in said Amelia's estate to George W. Radford, the one-seventh of said Amelia's estate to which said Thomas S. Sprague would be entitled, because of such assignment, shall be paid to him, said assignee, free and clear of any lien thereon."

To show clearly the controverted questions, a further statement of facts is necessary. In 1877—some years before the trust deed was made—Mrs. Sprague had made a will, by which she bequeathed her property to her children equally; and this will was superseded by the trust deed, as this court held in its former decision already referred to. At the time this trust was declared, it was accompanied by a summary of her dealings with her children, under a title called "Supplemental," reading as follows:

130 MICH.—7.

"SUPPLEMENTAL.

. "This is the statement of the 'advances, payments, charges, and debts' made by me to my children and held against them, intended, included, and referred to in clauses five and seven of trust instrument made by me to Irene Sprague Moore, dated April 22nd, 1889. The advances and charges against my daughter Hattie A. Deats shall be charged against the share which her daughter, Gracie Deats, is to receive under said trust; it being intended that Gracie Deats shall receive the same share and interest in the trust estate as her mother would have received had she been living at the time of the creation of the trust and named as an equal beneficiary thereunder, subject to charges for advances, etc., made to her. And for the purpose of enabling the trust to be fulfilled without uncertainty or conflict of right, I hereby now relinquish and assign to said trustee, for the purposes of said trust as expressed in said trust instrument, all rights reserved by me under said paragraph seven, said paragraph having now been fulfilled by this declaration.

"ADELINE L. SPRAGUE."

The following tables show the situation at that time.

First Period, to July 1, 1879.

|  | No Voucher. | Notes. | Total. |
|---|---|---|---|
| Rollin | $2,150 00 | $4,150 00 | $6,300 00 |
| Thomas | 2,150 00 | 1,800 00 | 3,950 00 |
| George | 2,250 00 |  | 2,250 00 |
| Mary | 2,130 75 | 700 .00 | 2,830 75 |
| Ida | 2,050 00 | 2,000 00 | 4,050 00 |
| Hattie | 50 00 |  | 50 00 |
|  |  |  | $19,430 75 |

Second Period, July 1, 1879, to April, 1889.

|  | Receipts. | Notes. | Total. |
|---|---|---|---|
| Rollin | $5,350 00 | $1,800 00 | $7,150 00 |
| Thomas | 6,000 00 | 2,350 00 | 8,350 00 |
| George | 8,019 44 | 400 00 | 8,419 44 |
| Mary | 5,350 00 | 500 00 | 5,850 00 |
| Ida | 5,350 00 | 700 00 | 6,050 00 |
| Hattie | 5,350 00 | 1,200 00 | 6,550 00 |
|  |  |  | $42,369 44 |

It is noticeable from these tables that, at the time the trust deed was made, no two children had received the same amount, while Irene had received nothing, and Amelia little more than her support. In addition to this,

Thomas S. Sprague had obtained his mother's indorsement on accommodation paper amounting to $19,600. It is claimed that this made the total amount received by him over $46,000, estimated by counsel for Mrs. Moore to be $10,000 or $11,000 more than his share of the estate.

At the outset it is important to determine whether all, and, if not all, then which, of the transactions between the intestate and her children were intended, when they occurred, to be treated as advancements. The record shows that previous to July 1, 1879, five of the children had received about $2,000 each, and Hattie $50, for which no vouchers were given. Amelia and Irene had received nothing. It appears to be conceded that these were advancements, and, if it were not conceded, we should have no doubt of it under the proofs and the provisions of the trust deed. During the same period about $9,000 was paid to several of the sons and daughters, for which notes were given; and these drew interest, either by their express terms or after maturity, unless they are to be treated as advancements. There is no presumption that money paid to a son, for which he gives to the ancestor a promissory note, is an advancement. On the contrary, the law presumes it to be a loan. The following cases cited in 1 Am. & Eng. Enc. Law (2d Ed.), 778, fully sustain the text in the statement that "the giving of any of the ordinary evidences of indebtedness is *prima facie* proof that the transaction was a loan, and not an advancement," viz.: *Harley* v. *Harley*, 57 Md. 340; *Speer* v. *Speer*, 14 N. J. Eq. 240; *Appeal of Harris*, 2 Grant, Cas. 304; *In re Jones' Estate*, 29 Pittsb. Leg. J. 89; *Appeal of Morr*, 80 Pa. St. 427; *Ex parte Middleton*, 42 S. C. 178 (20 S. E. 34). Cases involving promissory notes are the following: *Grey's Heirs* v. *Grey's Adm'rs*, 22 Ala. 233; *Robinson* v. *Moseley*, 93 Ala. 70 (9 South. 372); *Denman* v. *McMahin*, 37 Ind. 241; *Seagrist's Appeal*, 10 Pa. St. 424. See, also, *Vaden* v. *Hance*, 1 Head, 300; *In re Strock's Estate*, 158 Pa. St. 355 (27 Atl. 1003); *Johnson* v. *Ghost*, 11 Neb. 414. (8 N. W. 391); *Ruiz* v. *Campbell*,

6 Tex. Civ. App. 714 (26 S. W. 295); *House* v. *Woodard*, 5 Coldw. 196; *Dawson* v. *Macknet*, 42 N. J. Eq. 633 (8 Atl. 312). The rule was applied in the case of an outlawed note in *Batton* v. *Allen*, 5 N. J. Eq. 99 (43 Am. Dec. 630). Counsel cite several cases, some of which treat notes as advancements, but they are mostly cases where a subsequent will has shown a clear intention on the part of the testator to have them so treated. *Grey's Heirs* v. *Grey's Adm'rs*, 22 Ala. 233; *Brook* v. *Latimer*, 44 Kan. 431 (24 Pac. 946, 11 L. R. A. 805, 21 Am. St. Rep. 292); *Peabody* v. *Peabody*, 59 Ind. 556; *Harris* v. *Harris*, 69 Ind. 181; *Roberson* v. *Nail*, 85 Tenn. 124 (2 S. W. 19); *Krebs* v. *Krebs' Ex'r*, 35 Ala. 293; *Hall* v. *Davis*, 3 Pick. 450; *Grim's Appeal*, 105 Pa. St. 375; *Patterson's Appeal*, 128 Pa. St. 269 (18 Atl. 430). Our investigation of this question leads us to believe that the courts are substantially unanimous in their adherence to this rule.

After July 1, 1879, the intestate adopted the practice of taking receipts for moneys paid her children when she did not take notes. We understand that no one disputes that the items covered by the receipts were advances, and those covered by notes are governed by the same rule as other notes already discussed. This practice continued until 1889, when the trust deed was made. During the period last mentioned, Adeline L. Sprague also aided one of her sons in obtaining money by joining him in making or indorsing notes, which were hypothecated by him for money, and these notes were subsequently found to aggregate a much greater sum than was at first supposed by Mrs. Sprague's agent and Irene Moore. Attention has already been called to the provisions of the trust deed. While, as we have said, the notes create the presumption of loans, rather than advances, it was competent for the intestate to give them the character of the latter by her trust deed, if she chose to do so, as appears to have been done by wills in several of the cases cited. See *Krebs* v. *Krebs' Ex'r*, 35 Ala. 293; *Hall* v. *Davis*, 3 Pick. 450; *Sherwood* v.

*Smith,* 23 Conn. 516; *Wallace* v. *Owen,* 71 Ga. 544; *Needles' Ex'r* v. *Needles,* 7 Ohio St. 432 (70 Am. Dec. 85); *Kirby's Appeal,* 109 Pa. St. 41; *Darne's Ex'r* v. *Lloyd,* 82 Va. 859 (5 S. E. 87, 3 Am. St. Rep. 123). To have that effect, such an intention must appear in the trust deed, which, like other instruments, must be construed in the light of the circumstances under which it was made.

We cannot avoid inferring that Mrs. Sprague may have been, and probably was, disturbed by the reflection that advancements and loans exceeding $60,000 had been made to some of her children prior to April, 1889, while others had received nothing, and that, in addition to that, a further sum had been pledged through indorsement for the benefit of one of them. The point-blank refusal of Mr. Gray, then acting as her solicitor, to advise her to yield further to the importunities of one of their number, who at that time stated the amount of such outstanding paper for his benefit at $8,300, while in fact the amount of such paper exceeded $19,000, is significant, as is the further fact that it was apparently short-time paper. At this juncture Mrs. Sprague deeded substantially all of her property to her daughter Mrs. Moore, in trust.

The third charge upon the property was the maintenance of the grantor, and to this not less than $3,000 a year was to be applied, to which should be added expenses of last illness and burial. It was expected that the income would defray these expenses, and, if any income remained, the trustee might, if she thought advisable, pay yearly to each child of full age, during the life of her mother, a sum not exceeding $1,000; the same to be paid to all alike. Any sum thus paid was to be "equalized" to the minor grandchild, Gracie Deats, at some time before the termination of the trust. The trustee was to invest the estate, and upon the death of the mother it was to be distributed.

The directions as to distribution are clear and specific. The writing first states what shall be considered part of the trust estate for that purpose, and it is made to include not alone what came to the hands of the trustee, but—*First,*

all advances theretofore made to each and all of her children; *second*, all debts due or to become due from them to her, or to her trustee; *third*, all payments made by her or her trustee; *fourth*, advances made to Hattie Deats (the mother of Gracie), which were to be charged against Gracie in the distribution; *fifth*, all payments made thereafter on the account or for the benefit of each and all of them. Thus it appears that the purpose of the mother was that all debts due to her should be recognized as such, and that all advances should be brought into hotchpot at the time of the distribution of the estate, for the purpose of ascertaining the amount to be divided.

We have seen that a large amount of accommodation paper was outstanding, made for the benefit of one of the beneficiaries, and that this was to be paid by the trustee. It is also noticeable that it is called "accommodation paper," and the writing contains the implication that others *ought of right* to pay it. In this connection we should read another provision of this document, which is included with the other directions relating to what should be considered the estate for the purpose of distribution, viz.:

"Obligations heretofore entered into for the benefit of any of said beneficiaries, and hereafter paid by said trustee, shall bear interest at six per cent. per annum, and be charged to such beneficiary's share."

These various provisions are convincing against the contention of complainant's counsel that it was the intention that not only the sums represented by notes should be treated as advancements, in the technical sense of the term, but that the amounts paid to take up accommodation paper should also be so treated. Again, we have said that the writing indicates an intention that all advances should be brought into hotchpot, not with a view to the repayment of any sum really intended as an advancement, which it was beyond the power of the mother to compel, but for the purpose of an *equal* distribution of the residue of her estate. It is improbable that she intended to require an additional advancement of $8,000 as represented,

and $19,000 as it really was, to one who had already received a disproportionate share. Furthermore, the beneficiary recognized this by securing and renewing his paper from time to time, when asked to do so by the trustee's agent. The claim that he did this in ignorance of the terms of the trust is not sustained. The provision that 6 per cent. should be added, and the amount charged to the beneficiary's share, should be taken in the connection in which it occurs. This was for the purpose of ascertaining the estate to be divided, and has reference only to money applied upon debts of the character mentioned, and not repaid to the estate, or otherwise settled with the trustee; and such settlements should not be reopened. Nor does it exclude the right of the trustee to collect or charge interest on paper given to the grantor.

The next question that is presented relates to the equalization of shares. It involves principally the question of interest, and, *first*, whether interest should be computed on advances made by the mother, and, *second*, on advances made by the trustee. The payments for which notes were given, and the amount paid on indorsed paper, etc., are not to be treated as advancements, but loans. Interest should, therefore, be computed upon them according to their terms, or at the lawful rate. No specific provision is found requiring interest to be paid on advancements made by either the mother or trustee. If it is chargeable, in contravention of the general rule, which we recognize,—*i. e.*, that interest is not to be computed upon advancements,—it must be in obedience to provisions of the writing which imply it.

The first of the provisions relied on relates to payments by the trustee, already quoted, which implies an intention that all shall receive a like sum, and that, if anything should be withheld from Gracie Deats, it should be *equalized*. The other provision is the one expressing the mother's purpose to be that all "shall share *equally and ratably* in all *past, present, and future benefits*." These provisions raise a perplexing question. On the one

hand, the writing is specific in its enumeration of what shall go to make up the estate for the purpose of estimating shares. Nothing is said about interest upon advances previously made by the grantor, or which should thereafter be made by the trustee, or upon debts due or to become due, or upon payments made by her or the trustee, except as the latter may be included in the provision already quoted, relating to obligations theretofore entered into, etc.; yet we cannot suppose that she intended to stop interest running on loans, and, on the other hand, there is perhaps an implication that no interest was to be computed on past or future advances arising from her omission to provide for interest. It is also noticeable that she does not provide for advancements being paid to Gracie, but requires advancements made to those of full age to be equalized later as to her, instead of providing that she shall receive a similar sum. This is susceptible of either construction, viz., that she should subsequently receive a similar amount, with or without interest.

We understand it to be a general rule that interest is to be computed upon advancements after the death of the ancestor for the purpose of equalizing shares on distribution. See 1 Am. & Eng. Enc. Law, p. 785, and cases there cited. We think the intention expressed by this instrument is that, from the time this trust deed was made, all beneficiaries should share equally, and that the shares between them should be equalized from that time as to advances thereafter to be made, and as to the sums necessary to equal advancements theretofore made. In other words, she sought to divide the estate as of that date; and while we doubt an intention that interest should be computed back of that date on technical advances, she designed that it should be thereafter. In short, for the purposes of distribution we are disposed to treat the estate as though it had come into the hands of an executor at that date. See 1 Am. & Eng. Enc. Law, p. 785, note 5. This would allow interest to Mrs. Moore, and possibly others, on deferred payments of the annuity, and it would increase

the estate by the amount of the interest upon advances for the purpose of equalizing shares.

We are asked to confirm the distribution so far as it has been made. We have no hesitation in saying that it is within the terms of the trust for the trustee to proceed in the ordinary way to put the property received by her in a shape to distribute, and we are not disposed to question the disposition so far as made. We think, however, that no harm can result from leaving the matter of confirmation until full compliance with the decree which shall be made, if it shall then be made to appear that it has been complied with.

The foregoing discussion will serve to point out the way to determine the shares after the personal property of the trust estate is converted into money, and we see no objection to a partition of real property, either by division of the property or by sale and division of the proceeds under the direction of the circuit court; but some other subjects must be discussed in this connection. Amelia L. Sprague died in 1892, seven years before her mother. At the time she died she had a vested interest in this property under the trust deed, which expressly provides that, in case of the death of a beneficiary, the distributive share shall be paid to his or her estate for distribution according to law. Upon her death her seven brothers and sisters, including Gracie Deats, and her mother, became vested with interests in her estate, under sections 9064 and 6322 of the Compiled Laws; and in 1899, upon the death of the mother, the seven children took vested interests in her share. It appears that neither the mother nor Amelia left any debts, and therefore that Amelia's interest, whatever it was, is now vested in her six brothers and sisters and Gracie Deats. There is no occasion for distribution to the respective administrators, or for their intervention, except for the purpose of paying the costs of administration proceedings, which, inasmuch as it is unnecessary that any estate shall pass through their hands for any other purpose, should be limited to a reasonable allowance for such sums and ser-

---

Section 6322, in the 12th line above, should read 9322.

vices as they may have disbursed and performed, if any, in relation thereto.

While counsel have seen fit to come to this court upon the question of the necessity for the appointment of an administrator of the estate of Adeline L. Sprague, which, out of abundant caution, we held necessary, as it was insisted upon, a trial of the merits has disclosed that it was wholly unnecessary, and we think the party asking such appointment should be left to pay his own costs and disbursements in such proceedings; and the same should be done by the ones who asked administration upon the estate of Amelia.

The interests of two of the beneficiaries have been assigned. The first assignment by Thomas S. Sprague was to the trustee for the protection of the estate. It was valid, but perhaps unnecessary for this purpose. It also purported to secure her personally for all claims that she held against him. Among them was a note of $1,675, originally for borrowed money. Had a second assignment been made, running directly to her, there would have been sufficient consideration to support it, and we think she should not be required to lose her security because an attempt was made to secure her in both capacities. That this was the intention is clear, and it is a reasonable construction to give this paper that effect. Of course, her interest is second to that of the trust estate, and this assignment does not cover any interest subsequently inherited from the estate of Amelia. There were other assignments, by two of the sons, of their interests in the trust estate and Amelia's estate. No complaint is made of the decree regarding these, and we have no occasion to discuss them.

We are not disposed to disturb the decree of the circuit court as to compensation. The amount paid to the trustee's husband seems to us adequate for all services growing out of the transaction.

Amelia died vested of a one-eighth interest, and her estate should be credited with the same amount as any other beneficiary. This was not subject to any lien on behalf of the trust estate for advances to or debts due from other beneficiaries.

We have been subjected to considerable inconvenience through a failure of the index to name or describe the respective exhibits, which should be in some way identified. We have attempted to cover all points essential to an accounting, and the cause will be remanded for further proceedings. A decree in conformity to the foregoing may be taken. Irene Moore, trustee, will recover costs against Rollin C. Sprague and Thomas S. Sprague personally, and not as against the estate of Amelia.

MOORE, GRANT, and MONTGOMERY, JJ., concurred. LONG, J., did not sit.