*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MONIER KHALIL LIVING TRUST.

---

THOMAS KHALIL and SANDRA KHALIL
BENAVIDES,

　　　　　　Appellants,

v

EVELYN KHALIL and MELANIE ZAGAR
KHALIL as Co-Trustees of the MONIER KHALIL
LIVING TRUST, MIKHAIL KHALIL, and
ROSEMARY KHALIL,

　　　　　　Appellees.

UNPUBLISHED
June 9, 2022

No. 355342
Wayne Probate Court
LC No. 16-823742-TV

---

Before: RICK, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

In this trust action, appellants Thomas Khalil and Sandra Benavides appeal as of right the trial court's order denying their motion for leave to file a second amended petition and dismissing their first amended petition. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is the second time this Court has been called upon to review this matter. In *In re Monier Khalil Living Trust (On Reconsideration)*, 328 Mich App 151, 154-160; 936 NW2d 694 (2019), this Court provided the following factual background:

> This case involves a trust created by Monier Khalil in 1992. Monier died in 1994, leaving behind his wife, Evelyn, and their four children: Mikhail, Thomas, Sandra, and Melanie. After his death, Monier's assets (mostly Corktown real estate) flowed into two subtrusts: the marital trust and the residuary trust. Both were intended to provide for Evelyn for the remainder of her life. Evelyn and

-1-

Melanie were designated as cotrustees for the subtrusts. When Evelyn passes away, any remaining assets will flow into the children's trust to be divided equally between Monier's children.

The marital and residuary trusts grant Evelyn prodigious power and authority to use and disburse trust assets. Evelyn may request distributions without limitation and for any reason and may exhaust the trust principals to provide for her needs. Evelyn may disburse of trust assets during her lifetime, favoring one child over another in doing so. The trust also shelters Evelyn from "accountab[ility] or liab[ility] to" any of her children "for the manner in which [s]he, in good faith, exercises [her] powers and discretions; [her] judgment with respect to all matters shall be binding and conclusive upon all" her children.

Evelyn, Melanie, and Mikhail (respondents) contend that in 2007, Evelyn distributed certain trust properties to her children. Melanie, Thomas, and Mikhail received properties in Corktown, but Evelyn purchased a home for Sandra. Evelyn claims that the trust continues to make the mortgage, insurance, and tax payments for the home. Respondents further allege that Thomas sold his properties to Mikhail, but now regrets his decision.

In 2016, Sandra and Thomas (petitioners) launched this probate case by filing a "verified petition for accounting, surcharge of the trustee; the return of property to Hotch Potch; transferred as a result of undue influence and removal of trustees."[1] They later filed an amended petition. In these pleadings, petitioners sought an accounting, claiming that respondents had denied previous requests for information. Petitioners asserted that Evelyn and Melanie breached their duty of loyalty by giving Mikhail an unequal share of property from the trust and by depleting the trust for purposes other than Evelyn's care. Petitioners further contended that Mikhail had unduly influenced Evelyn into giving him control over the trust, which he used as his personal piggy bank. They alleged that Mikhail had "usurped" the role of trustee by listing himself on the trust's bank accounts. Petitioners presented evidence that Mikhail managed the daily business of the trust properties and used trust funds to manage his separately owned properties. Petitioners raised three counts: "breach of duty of loyalty by the trustee['s] depletion of the trust assets," undue influence, and for an accounting, surcharge, and return of improperly transferred properties to the trust.

Respondents retorted that the language of the trust gave Evelyn great discretion to disburse property as she saw fit and even to designate Mikhail as a

---

[1] "Hotch Potch" is an antiquated probate term of art, more commonly referred to as "hotch pot." The Supreme Court has indirectly adopted the following definition: "Hotchpot is the bringing into the estate of an intestate an estimate of the value of advancements made by the intestate to his or her children, in order that the whole may be divided in accordance with the statute of descents." *In re Howlett's Estate*, 275 Mich 596, 600; 267 NW 743 (1936) (quotation marks and citation omitted). See also *Sprague v Moore*, 130 Mich 92, 102; 89 NW 712 (1902).

business representative. Respondents further contended that the property distributions challenged by petitioners were made in 2007 with petitioners' full knowledge and consent.

The probate court conducted virtually all of the proceedings that followed off the record, hampering our review. The court's notes indicate that at an in-chambers conference, the court verbally directed the parties to file "briefs in support" by May 19, 2017. Petitioners' brief contended that over a 10-year period, the trust transferred to Mikhail and his companies 11 of the trust properties. These transfers were a breach of Evelyn's fiduciary duty and her duty of loyalty to the trust beneficiaries and were accomplished as a result of Mikhail's undue influence, petitioners asserted. Petitioners also believed that Mikhail benefited from improper cash transfers that were not accounted for in the public record, and petitioners denied that they ever consented to them. In addition, petitioners contested respondents' assertion that the trust gave Evelyn broad power to make whatever transfers she wished; such unfettered authority, petitioners argued, would defeat the purpose of the trust, i.e., to ensure that Evelyn was financially provided for.

Petitioners further asserted that they "ha[d] twice addressed this Court and pleaded to take the deposition of Evelyn . . . to show to the Court that she is, in fact, under undue influence of Mikhail . . . ." Petitioners did not indicate on what date these pleas were made, and the court failed to conduct any phase of this proceeding in the courtroom or on the record; everything was discussed in chambers. Petitioners again asked to depose their mother "to establish whether such acts are of her own free will or as they appear to be the unvarnished undue influence of Mikhail . . . ." And petitioners asserted that they established a presumption of undue influence as Evelyn appeared on case-related matters only in the company of Mikhail, she shared joint representation with Mikhail, and Evelyn directed her other children to talk to Mikhail whenever they asked trust- or property-related questions.

Respondents filed their brief on May 19, asserting that the transfers made by Evelyn were authorized by the trust itself and by applicable law. Although any remainder will flow into the children's trust, "while Evelyn is living, none of the children[ ] has any right to distributions of trust assets or any right to an accounting of such assets." Evelyn's decisions in this regard were "binding and conclusive," precluding any liability to her children. Respondents contended that the petition was "a half-baked attempt to gain leverage in a sibling rivalry." Specifically, respondents insisted that petitioners wanted "to undo certain transfers of property from their mother's trust that were made ten years ago, with Petitioners' full consent and knowledge, and to their benefit, because they believe they can profit from it."

During another in-chambers, off-the-record "hearing," the court ordered respondents to present an accounting within 30 days, including the trust's assets as of January 1, 2007, all property and cash disbursements made to Evelyn's children since 2007, and a list of income generated by the trust since 2007 along with "a

-3-

yearly disclosure of those monies paid to Evelyn . . . from said income . . . ." Petitioners were given two weeks to respond. The court scheduled a hearing on the "petition to allow account(s)" for September 13, 2017. However, respondents never filed a petition or motion to allow the accounts. Moreover, no hearing was ever held. The court adjourned the hearing to October 17, and then to October 31. As will be discussed later, the court rendered its final decision before the hearing was conducted.

Petitioners were not satisfied with the proffered accounting, contending that respondents engaged in creative accounting by claiming money was paid to children when it was not, and citing a number of cash transfers with no stated purpose. After a telephone conference with the attorneys, the court ordered a forensic review and accounting of the trust by an independent accountant, which was completed and filed on October 26, 2017. In the meantime, respondents filed supplemental remarks to the initial accounting. Respondents noted that petitioners had recently presented additional information, including a "Quick Book Ledger for a certain bank account[.]" Those checks improperly identified Mikhail as a trustee. After reviewing several check copies, petitioners accused Mikhail of writing checks funded by the trust to make repairs on his personal properties and for services on Sandra's house that were actually funded by an insurance payout.

Following the presentation of the forensic accounting, and before the October 31 date of the rescheduled hearing, the probate court "denied" petitioners' first amended verified petition. The court noted that it had held "various hearings" and ultimately "took the matter under advisement . . . ." None of those "hearings" were conducted on the record, and therefore no transcripts could be ordered.

The court found that the trust "was created for the benefit of" Evelyn and afforded her great discretion and authority to do what she liked with the trust property. The court rejected that Evelyn violated the terms of the trust by transferring properties to Mikhail:

Nothing in the trust prevents [Evelyn] as co-trustee from disposing [of] the trust assets as she deemed appropriate. In fact, the trust specifically authorized her to sell, convey, and dispose of any property as she deemed advisable. Moreover, the trust explicitly states that the settlor "intend[ed] to give the trustee the broadest, fullest and most complete power and authority." As co-trustee, [Evelyn] is granted the authority to exercise her powers as she determines to be advisable without being accountable or liable to any interested person as long as she acted in good faith. Petitioners do not assert that [Evelyn]'s actions were not taken in good faith. Under the trust, [Evelyn] was granted broad authority in the management and distribution of trust assets as surviving spouse and co-trustee with Melanie. Thus, petitioners failed to establish that [Evelyn] breached her duty of loyalty, and their claim must fail.

The court also rejected petitioners' claim of undue influence. The court determined that petitioners "wholly fail[ed] to allege, address, or establish the

-4-

existence of a fiduciary or confidential relationship. . . . [T]he existence of a family relationship does not, by itself, establish a fiduciary relationship." The court found that petitioners "fail[ed] to allege or demonstrate that there was a reposing of confidence on one side and influence on the other" or that "Mikhail overcame the decedent's volition, destroyed her free agency, and impelled her to act against her free will." The court recited that Evelyn "affirmatively asserts that she has not been unduly influenced." Accordingly, the court dismissed petitioners' claims in their entirety.

After a thorough review of the trial court's reasons and procedures used, this Court held the trial court erred by dismissing petitioners' undue-influence claim and remanded for further proceedings on that claim.

On remand, and after discovery was completed, respondents moved for summary disposition on the remaining claim of undue influence. Before the court resolved respondents' motion, however, petitioners moved for leave to file a second amended petition. In the proposed second amended petition, petitioners raised five counts. Count I alleged Evelyn and Melanie had breached the terms of the trust by, in part, failing to allocate the trust's assets between the marital and residual trusts, attempting to deplete the trust's assets to the detriment of petitioners, failing to read and understand the terms of the trust, and commingling the trust's assets with their own. Count II alleged Evelyn and Melanie, as cotrustees, and Mikhail, as an acting cotrustee, had breached their fiduciary duties to petitioners by failing to administer the trust in good faith. Count III alleged that Evelyn and Melanie had been unduly influenced into permitting Mikhail to manage the trust and authorizing distributions from the trust. Count IV alleged Mikhail had converted trust property while exercising control over Evelyn and Melanie. Finally, Count V sought an accounting of the trust's assets, and the removal and surcharge of the trustees for damages to the trust.

On September 9, 2020, the trial court granted respondents' motion for summary disposition as to the undue-influence claim for multiple reasons. At a subsequent hearing, the trial court denied petitioners' motion for leave to file a second amended petition. While petitioners filed a claim of appeal as to both orders, this Court dismissed the claim of appeal as to the trial court's September 9, 2020 order granting summary disposition for lack of jurisdiction. *In re Monier Khalil Living Trust*, unpublished order of the Court of Appeals, entered November 10, 2020 (Docket No. 355342). Accordingly, only the order denying petitioners' motion for leave to file a second amended petition is before the Court.

## II. DISCUSSION

Petitioners argue that the trial court abused its discretion by denying their motion for leave to file a second amended petition, arguing that any reliance the trial court placed on its prior conclusion that petitioners' claim was barred by the six-year statute of limitations for fraud claims or this Court's previous decision was erroneous. Petitioners also argue there was no other basis to deny their motion to amend.

-5-

"A trial court's decision concerning a motion to amend pleadings[2] is reviewed for an abuse of discretion." *Forton v St Clair Co Pub Guardian*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 354825); slip op at 5. An abuse of discretion occurs when a trial court chooses an outcome that falls outside the range of reasonable and principled outcomes, or makes an error of law. *Id.*

" 'The grant or denial of leave to amend pleadings is within the trial court's discretion.' " *Jawad Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 207; 920 NW2d 148 (2018), quoting *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 142; 715 NW2d 398 (2006). "[A] motion to amend should ordinarily be denied only for particularized reasons, including undue delay, bad faith or a dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, or futility." *PT Today Inc*, 270 Mich App at 143. "The trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile." *Id.*

In denying the motion to amend, the trial court stated in full:

> I don't see any basis whatsoever, at this point to now entertain this Amended, the 2nd Amended Petition, in light of the Court's, [t]he Court of Appeals' decision and in light of my decision to grant the Motion for Summary Disposition.
>
> Consequently, for the reasons, so stated, as well as for the arguments that have been offered and the pleadings that have been filed, by the petitioners, to this 2nd Amended Petition, I will deny the Motion for Leave to File a 2nd Amended Petition.

Thus, the trial court offered three bases for the decision: (1) its decision granting summary disposition of the undue influence claim, (2) this Court's prior opinion, and (3) the reasons articulated by respondents in opposition to the motion.

In reviewing the decision under an abuse of discretion standard, we recognize that there is no single correct outcome; rather, there will likely be a range of possible reasoned outcomes, *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006), and we cannot simply insert our view of the more principled answer in place of the trial court's articulated reasons, so long as the decision is within the range of possible outcomes. *Id.*; *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 228; 600 NW2d 638 (1999); *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). As briefly explained below, there are at least three principled reasons why the trial court did not abuse its discretion in denying the motion to amend.

First, the trial court was correct that petitioners' attempt to assert another undue influence claim in the proposed second amended petition was barred by its ruling dismissing the undue influence claim contained in the first amended petition. Not for law of the case reasons, but for

---

[2] The definition of a pleading in MCR 2.110(A) does not include a probate petition, but MCR 5.001(B)(2) states: "[r]eferences to 'pleadings' in the Michigan Court Rules also apply to petitions, objections, and claims in probate court proceedings."

the underlying rationale utilized by the trial court, which have the same applicability to the proposed new claim of undue influence set out in the second amended petition. Additionally, reference to this Court's prior opinion reinforced the fact that petitioners had not appealed the dismissal of the breach of loyalty/depletion of assets claim contained in the first amended petition, *Khalil Living Trust*, 328 Mich App at 160, and seeking to raise these allegations again was simply too late, if not procedurally barred. See *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 401; 729 NW2d 277 (2006).

Second, whatever the merits of the claims sought to be litigated through the second amended petition, these claims are merely a re-hash of what was contained in the first amended petition. See *Lane v KinderCare Learning Centers*, 231 Mich App 689, 697; 588 NW2d 715 (1998) (upholding denial of a motion to amend since the proposed amendment restated much of the same allegations). Specifically, in both the first amended petition and the proposed second amended petition, petitioners attempt to challenge the same property transfers and allege the same over-arching theory that Mikhail improperly influenced his mother regarding the transfer of Trust assets, all to the detriment of petitioners. And although the theories in some instances are different, the same underlying facts are at issue. For example, the first amended petition contained three counts: count I, alleging "Breach of Loyalty by the Trustee Depletion of the Trust Assets by the Trustee," count II alleging Undue Influence, and count III alleging "Accounting, Surcharge return to Hotch Potch." Aside from continuing forward with the undue influence claim, and accounting and surcharge counts, the second amended petition contained new breach of trust, conversion, and breach of fiduciary duties claims. Yet the allegations in those three new counts contain many of the same allegations contained within the first amended petition, including allegations of trust depletion, failure to protect trust property, failure to make accountings, Mikhail's improper taking of trust properties, and the undue influence imposed upon Evelyn. Nothing new and material is alleged, though the allegations are in some instances more detailed and wrapped up in more counts. To deny the motion to amend under these circumstances was a principled outcome and supported by case law.

Third, the trial court's acceptance of the laches argument was another principled way to resolve the remainder of the motion. As respondents argued to the trial court—and to this Court— much of the facts underlying the claims set forth in the proposed second amended petition arose years before the initial petition was even filed, which was 2016. Indeed, some of the transfers petitioners continue to challenge occurred in 2007, nine years before the first petition was filed. Additionally, the second amended petition was proposed in 2020, four years after the case was first filed. And although the passage of time is not alone sufficient to invoke laches, it is a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. *Dep't of Pub Health v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996).

Here, respondents have had to litigate the same basic factual claims for four years, and it is evident from the trial court's other rulings that the parties have been at odds over the trusts and

property divisions for years before the litigation commenced.[3]  A prior dismissal on the merits took place, a subsequent appeal occurred where only one claim was sent back to the trial court to resolve after discovery, and that discovery took place.  Importantly, the subsequent dismissal of the undue influence claim remanded back to the trial court was not appealed, leaving the claims in the first amended petition fully and finally litigated.  To require respondents to now defend another legal battle—for potentially years to come—over the same essential conveyances and actions— could be considered prejudicial.  *Bayberry Group Inc v Crystal Beach Condo Ass'n*, 334 Mich App 385, 410; 964 NW2d 846 (2020) (recognizing laches can apply when a plaintiff has not acted with reasonable diligence, causing prejudice to the defendant).  And, as respondents note, there have been good-faith purchasers since 2007 that have bought some of the now-disputed properties, which would surely complicate any issues regarding remedies, adding to the prejudice in the delay.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro

---

[3] No doubt the presence of a family relationship is entitled to great weight in a laches determination, "not only because (relatives) may naturally and commendably be reluctant to engage in litigation, but also because they ought to be able to rely more on substantial justice being voluntarily done by a member of the family then by a stranger." *Wright v Wright*, 37 Mich 55, 56 (1877).  "Relatives, however, cannot be excused from suing indefinitely . . . ." *Carpenter v Mumby*, 86 Mich App 739, 750; 273 NW2d 605 (1978).