# Court of Appeals, State of Michigan

## ORDER

In re Monier Khalil Living Trust

Docket No.    341142

LC No.        2016-823742-TV

Elizabeth L. Gleicher
Presiding Judge

Kirsten Frank Kelly

Anica Letica
Judges

The Court orders that the motion for reconsideration is GRANTED, and this Court's opinion issued March 12, 2019 is hereby VACATED. A new opinion is attached to this order.

/s/ Elizabeth L. Gleicher

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

May 14, 2019
Date

Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MONIER KHALIL LIVING TRUST.

|  |  |
|---|---|
| THOMAS KHALIL and SANDRA KHALIL BENAVIDES, | FOR PUBLICATION<br>May 14, 2019<br>9:05 a.m. |
| Appellants, | |
| v | No.  341142<br>Wayne Probate Court |
| EVELYN KHALIL and MELANIE KHALIL ZAGAR, co-trustees of MONIER KHALIL LIVING TRUST, and MIKHAIL KHALIL, | LC No.  2016-823742-TV |
| Appellees. | |

Before:  GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

In this trust action, two of the trustee's children contended that a sibling unduly influenced their mother to allot him a disproportionate share of the trust's assets.  The probate court dismissed the action without a hearing and despite that none of the parties filed a dispositive motion.  The court inexplicably discounted the evidence presented by petitioners and failed to create an adequate record for this Court's review.  We vacate the probate court's order summarily dismissing petitioners' undue influence claim and remand for further proceedings, which must be conducted on the record.

## I. BACKGROUND

This case involves a trust created by Monier Khalil in 1992.  Monier died in 1994, leaving behind his wife, Evelyn, and their four children: Mikhail, Thomas, Sandra, and Melanie. After his death, Monier's assets (mostly Corktown real estate) flowed into two sub-trusts: the marital trust and the residuary trust.  Both were intended to provide for Evelyn for the remainder of her life.  Evelyn and Melanie were designated as co-trustees for the sub-trusts.  When Evelyn

-1-

passes away, any remaining assets will flow into the children's trust to be divided equally between Monier's children.

The marital and residuary trusts grant Evelyn prodigious power and authority to use and disburse of trust assets. Evelyn may request distributions without limitation and for any reason and may exhaust the trust principals to provide for her needs. Evelyn may disburse of trust assets during her lifetime, favoring one child over another in doing so. The trust also shelters Evelyn from "accountab[ility] or liab[ility] to" any of her children "for the manner in which [s]he, in good faith, exercises [her] powers and discretions; [her] judgment with respect to all matters shall be binding and conclusive upon all" her children.

Evelyn, Melanie, and Mikhail (respondents) contend that in 2007, Evelyn distributed certain trust properties to her children. Melanie, Thomas, and Mikhail received properties in Corktown, but Evelyn purchased a home for Sandra. Evelyn claims that the trust continues to make the mortgage, insurance, and tax payments for the home. Respondents further allege that Thomas sold his properties to Mikhail, but now regrets his decision.

In 2016, Sandra and Thomas (petitioners) launched this probate case by filing a "verified petition for accounting, surcharge of the trustee; return of property to Hotch Potch; transferred as a result of undue influence and removal of trustees."[1] They later filed an amended petition. In these pleadings, petitioners sought an accounting, claiming that respondents had denied previous requests for information. Petitioners asserted that Evelyn and Melanie breached their duty of loyalty by giving Mikhail an unequal share of property from the trust and by depleting the trust for purposes other than Evelyn's care. Petitioners further contended that Mikhail had unduly influenced Evelyn into giving him control over the trust, which he used as his personal piggy bank. They alleged that Mikhail had "usurped" the role of trustee by listing himself on the trust's bank accounts. Petitioners presented evidence that Mikhail managed the daily business of the trust properties and used trust funds to manage his separately owned properties. Petitioners raised three counts: "breach of duty of loyalty by the trustee['s] depletion of the trust assets", undue influence, and for an accounting, surcharge, and return of improperly transferred properties to the trust.

Respondents retorted that the language of the trust gave Evelyn great discretion to disburse property as she saw fit and even to designate Mikhail as a business representative. Respondents further contended that the property distributions challenged by petitioners were made in 2007 with petitioners' full knowledge and consent.

---

[1] "Hotch Potch" is an antiquated probate term of art, more commonly referred to as "hotch pot." The Supreme Court has indirectly adopted the following definition: "Hotchpot is the bringing into the estate of an intestate an estimate of the value of advancements made by the intestate to his or her children, in order that the whole may be divided in accordance with the statute of descents." *In re Howlett's Estate*, 275 Mich 596, 600; 267 NW 743 (1936) (quotation marks and citation omitted). See also *Sprague v Moore*, 130 Mich 92, 102; 89 NW 712 (1902).

The probate court conducted virtually all of the proceedings that followed off the record, hampering our review. The court's notes indicate that at an in-chambers conference, the court verbally directed the parties to file "briefs in support" by May 19, 2017. Petitioners' brief contended that over a 10-year period, the trust transferred to Mikhail and his companies 11 of the trust properties. These transfers were a breach of Evelyn's fiduciary duty and her duty of loyalty to the trust beneficiaries and were accomplished as a result of Mikhail's undue influence, petitioners asserted. Petitioners also believed that Mikhail benefitted from improper cash transfers that were not accounted for in the public record, and denied that they ever consented to them. And petitioners contested that the trust gave Evelyn broad power to make whatever transfers she wished. Such unfettered authority, petitioners argued, would defeat the purpose of the trust, i.e., to ensure that Evelyn was financially provided for.

Petitioners further asserted that they "ha[d] twice addressed this Court and pleaded to take the deposition of Evelyn . . . to show to the Court that she is, in fact, under undue influence of Mikhail . . . ." Petitioners did not indicate on what date these pleas were made and the court failed to conduct any phase of this proceeding in the courtroom or on the record; everything was discussed in chambers. Petitioners again asked to depose their mother "to establish whether such acts are of her own free will or as they appear to be the unvarnished undue influence of Mikhail." And petitioners asserted that they established a presumption of undue influence as Evelyn appeared on case-related matters only in the company of Mikhail, she shared joint representation with Mikhail, and Evelyn directed her other children to talk to Mikhail whenever they asked trust or property-related questions.

Respondents filed their brief on May 19, asserting that the transfers made by Evelyn were authorized by the trust itself and by applicable law. Although any remainder will flow into the children's trust, "while Evelyn is living, none of the children[] has any right to any distributions of trust assets or any right to an accounting of such assets." Evelyn's decisions in this regard were "binding and conclusive," precluding any liability to her children. Respondents contended that the petition was "a half-baked attempt to gain leverage in a sibling rivalry." Specifically, respondents insisted that petitioners wanted "to undo certain transfers of property from their mother's trust that were made ten years ago, with Petitioners' full consent and knowledge, and to their benefit, because they believe they can profit from it."

During another in-chambers, off-the-record "hearing," the court ordered respondents to present an accounting within 30 days, including the trust's assets as of January 1, 2007, all property and cash disbursements made to Evelyn's children since 2007, and a list of income generated by the trust since 2007 along with "a yearly disclosure of those monies paid to Evelyn . . . from said income." Petitioners were given two weeks to respond. The court scheduled a hearing on the "petition to allow account(s)" for September 13, 2017. However, respondents never filed a petition or motion to allow the accounts. Moreover, no hearing was ever held. The court adjourned the hearing to October 17, and then to October 31. As will be discussed later, the court rendered its final decision before the hearing was conducted.

Petitioners were not satisfied with the proffered accounting, contending that respondents engaged in creative accounting by claiming money was paid to children when it was not, and citing a number of cash transfers with no stated purpose. After a telephone conference with the attorneys, the court ordered a forensic review and accounting of the trust by an independent

accountant, which was completed and filed on October 26, 2017. In the meantime, respondents filed supplemental remarks to the initial accounting. Respondents noted that petitioners had recently presented additional information, including a "Quick Book Ledger for a certain bank account." Those checks improperly identified Mikhail as a trustee. After reviewing several check copies, petitioners accused Mikhail of writing checks funded by the trust to make repairs on his personal properties and for services on Sandra's house that were actually funded by an insurance payout.

Following the presentation of the forensic accounting, and before the October 31 date of the rescheduled hearing, the probate court "denied" petitioners' first amended verified petition. The court noted that it had held "various hearings" and ultimately "took the matter under advisement." None of those "hearings" were conducted on the record and therefore no transcripts could be ordered.

The court found that the trust "was created for the benefit of" Evelyn and afforded her great discretion and authority to do what she liked with the trust property. The court rejected that Evelyn violated the terms of the trust by transferring properties to Mikhail:

> Nothing in the trust prevents [Evelyn] as co-trustee from disposing [of] the trust assets as she deemed appropriate. In fact, the trust specifically authorized her to sell, convey, and dispose of any property as she deemed advisable. Moreover, the trust explicitly states that the settlor "intend[ed] to give the trustee the broadest, fullest and most complete power and authority." As co-trustee, respondent is granted the authority to exercise her powers as she determines to be advisable without being accountable or liable to any interested person as long as she acted in good faith. Petitioners do not assert that respondent's actions were not taken in good faith. Under the trust, respondent was granted broad authority in the management and distribution of trust assets as surviving spouse and co-trustee with Melanie. Thus, petitioners failed to establish that [Evelyn] breached her duty of loyalty, and their claim must fail.

The court also rejected petitioners' claim of undue influence. The court determined that petitioners "wholly fail[ed] to allege, address, or establish the existence of a fiduciary or confidential relationship. The existence of a family relationship, standing alone, does not establish a fiduciary relationship." The court found that petitioners "fail[ed] to allege or demonstrate that there was a reposing of confidence on one side and influence on the other" or that "Mikhail overcame the decedent's volition, destroyed her free agency, and impelled her to act against her free will." The court recited that Evelyn "affirmatively asserts that she has not been unduly influenced." Accordingly, the court dismissed petitioners' claims in their entirety.

## III. TIMING OF DISMISSAL

Petitioners first challenge the probate court's summary dismissal of their claims as premature, noting that respondents had not filed a summary disposition motion and petitioners were not offered a rebuttal opportunity. We note that the probate court granted petitioners' request for an accounting and no further relief can be granted on that claim. Moreover, petitioners have not challenged the probate court's dismissal of their breach of loyalty claim.

The only issue before this Court is whether the probate court properly resolved petitioners' claim that Mikhail unduly influenced Evelyn to deplete the trust's assets.

We review for an abuse of discretion a probate court's decisions whether to remove or surcharge a trustee. *In re Baldwin Trust*, 274 Mich App 387, 396-397; 733 NW2d 419 (2007). We review for clear error any underlying factual findings made by the court. *Id*. at 396. The probate court's denial of petitioners' petition to remove and surcharge the trustees and for return of property to the trust was essentially a summary dismissal of the action pursuant to MCR 2.116(C)(10), which we review de novo. *Id*.

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotation marks and citations omitted).]

Petitioners rest their procedural challenge on the unpublished opinion in *In re Clemence Trust*, unpublished per curiam opinion of the Court of Appeals, issued October 31, 2017 (Docket No. 332099). Rebecca Clemence had four children. After her husband's 2005 death, Rebecca lived alone with her daughter Katherine. While they resided together, Rebecca updated her trust and will to leave the majority of her property to Katherine. Rebecca's other three children did not learn of the change until after their mother's death in 2013. The petitioners asserted that Rebecca exhibited signs of dementia and memory loss even before her husband's death and therefore lacked capacity to knowingly change her estate plan in 2005. They further contended that Katherine used their mother's faltering health to her advantage and unduly influenced their mother to change her trust and will. *Id*. at 1-2.

The petitioners sought to remove Katherine as trustee, accusing Katherine of breaching her fiduciary duty and challenging the validity of the trust at the time of its inception based on Rebecca's incapacity. As the proceedings moved forward, the petitioners accused Katherine of withholding information about Rebecca's health and assets. *Id*. at 2. The petitioners filed a motion to compel Katherine to produce additional information regarding Rebecca's health and the court ordered the petitioners to subpoena each of Rebecca's known doctors. Unfortunately, none of the doctors maintained records back to 2005. *Id*. at 3. The petitioners provided affidavits, however, describing their personal observations of their mother's mental and physical health since 2005. *Id*. at 3-4.

"[T]he probate court determined to take out of order Katherine's petition to disburse the remainder of the trust assets, essentially closing the case." *Id*. at 4. We noted that "[t]he court set out [on] this course despite that Katherine had not filed a motion to dispose of the claims petitioners raised in their petition." *Id*. The probate court described that the petitioners'

discovery attempts had been unfruitful, no additional information could be had, and it was "time to close it down." *Id*. At a hearing conducted on the record, the petitioners complained that the probate court was summarily dismissing their claims while ignoring the evidence presented by the witnesses' affidavits, but the court ruled:

> "We've been over and over, nothing has been presented. I think it's too little, too late. I know you look confused, but you understand the process of appeal and you have that right.
>
> I find no merit, in your clients' position at all. I've given them every opportunity to present anything, that at the time the changes were made, there was any medical documentation to support severe enough impairment, to preclude her from having the capacity to make the changes that she made." [*Id*.]

We vacated the probate court's order and remanded for further proceedings, holding that the petitioners' affidavits regarding their first-hand knowledge of Rebecca's capacity "created a question of fact to be resolved before the trust assets were disbursed and the case closed." *Id*. at 6. We continued:

> The court took no notice of this contest, refusing to look beyond petitioners' inability to secure medical documentation.
>
> The probate court also took no consideration of petitioners' contention that Katherine unduly influenced her mother into changing her estate division while she was vulnerable due to the recent loss of her husband. The court noted on the record that it found Katherine's repeated claims of ignorance to be incredible. Katherine lived with her mother continually from her father's June 2005 death until her mother's October 2013 passing. Katherine obstinately denied being her mother's primary caregiver despite this arrangement, and despite that all documentation regarding the initiation of her home healthcare services and the management of Rebecca's aides was signed by Katherine. And at some point, Katherine was named Rebecca's power of attorney, giving her some level of financial control.
>
> This record evidence created a rebuttable presumption of undue influence. See *Bill & Dena Brown Trust [v Garcia]*, 312 Mich App [684, 701; 880 NW2d 269 (2015)]. Specifically, Katherine served as a fiduciary for [her] mother, or at least was in a position of trust. She benefitted from the amended trust by being granted her mother's house and 70% of all remaining property. Katherine had the opportunity to influence her mother's decisions from June through August 2005, as the two women lived alone together. The probate court was required to address this issue on some level before ordering the winding down of the trust.
>
> *Regardless of the state of the evidence, the probate court did not follow proper procedure, dismissing this matter out of hand and without motion from Katherine.* Katherine was represented by counsel knowledgeable on the law. Yet Katherine never filed a motion to summarily dismiss petitioners' challenge for

-6-

lack of evidentiary support. The only remaining conclusion is that the court dismissed the case as some sort of penalty against petitioners. The petitioners never violated a discovery order, however. . . . The court never ordered petitioners to do anything more. Petitioners deposed Katherine in a vain attempt to create a more complete picture of Rebecca's medical and financial conditions. Petitioners may have dragged their feet along the way, but not so much as to warrant dismissal without warning. [*Id*. at 6-7 (emphasis added).]

Respondents, on the other hand, rely on *Baldwin*, 274 Mich App 387, for their contention that the court properly dismissed petitioners' claims without a hearing and without a motion. In *Baldwin*, Thomas Shoaff alleged that Thomas Woods failed to protect creditors in his role as personal representative of an estate and trustee of a trust created by Duane Baldwin and therefore sought to remove Woods from those roles. *Id*. at 389.

Shoaff had been a business partner of Duane and Mark Baldwin. Duane did not reimburse Shoaff under a contractual indemnity agreement after Shoaff was forced to cover their failed business's loans. *Id*. at 390-391. Following Duane's death, Shoaff successfully petitioned the probate court to appoint a neutral trustee and personal representative for Duane's estate and trust. *Id*. at 392. Shoaff then secured a $700,000 consent judgment in circuit court against the estate and trust based on the indemnification agreement. *Id*. at 392-293. A bench trial followed on certain equitable claims; Shoaff prevailed and the court set aside various property transfers made by the Baldwins to defraud their creditors. The court also awarded Shoaff more than $1.3 million. *Id*. at 393. This Court affirmed based on overwhelming evidence that Duane had created sham corporations and made fraudulent transfers to avoid personal liability on his debts. *Id*. at 395. Through these actions, Duane left himself insolvent. *Id*.

In the meantime, Shoaff sought to have Woods removed as trustee and personal representative because he failed to act in the best interests of Duane's creditors, specifically Shoaff. *Id*. at 393. The probate court denied the request but ordered Woods not to disburse any amount over $2,500 without court approval. *Id*. at 394. Shoaff renewed his petition to remove Woods when Woods took inadequate action to recover the fraudulently transferred properties and to pierce the corporate veils of Duane's sham companies. *Id*. at 394. At a pretrial conference, the probate court "sua sponte" denied Shoaff's petitions, concluding "that there was no genuine issue regarding any material fact that would justify removing Woods, sanctioning Woods, or awarding Shoaff any more money from the estate." *Id*. at 396.

In a brief analysis, this Court rejected Shoaff's challenge to the probate court's sua sponte grant of summary disposition in Woods's favor:

Under MCR 2.401(C)(1)(*l*), during a pretrial conference, the court may consider any matters that may aid in the disposition of the action. Further, at any time after an action has commenced, if the pleadings show that a party is entitled to judgment as a matter of law, the court must render judgment without delay. MCR 2.116(I)(1). In that regard, if no factual dispute exists, a trial court is required to dismiss an action when a party is entitled to judgment as a matter of law, and a motion for summary disposition is unnecessary. *Sobiecki v Dep't of Corrections*, 271 Mich App 139, 141; 721 NW2d 229 (2006).

Regarding Shoaff's reliance on Judge (now Justice) CORRIGAN's concurrence in *Haji v Prevention Ins Agency, Inc*, 196 Mich App 84; 492 NW2d 460 (1992), this case is clearly distinguishable because the probate court's sua sponte grant of summary disposition was not based on a novel, substantive legal theory not raised by the parties, *id*. at 86, but was based on the substantive legal theories pursued by Shoaff. We find that, procedurally, the probate court did not err in dismissing the petitions and that Shoaff was afforded due process because he had had ample opportunity to respond to the probate court's sua sponte raising of the issue. [*Baldwin*, 274 Mich App at 398-399.]

This case is more akin to *Clemence* than *Baldwin*. As in *Clemence*, the probate court jumped the gun and prematurely dismissed petitioners' claims without a motion filed by respondents. Contrary to the lower court docket sheet, respondents did not file a motion to allow the accounting. The hearing scheduled for October 31, 2017 was actually on petitioners' motion to remove the trustees and return property to the trust. The probate court acted without allowing the parties to argue at that hearing.

Petitioners presented evidence to create a genuine issue of material fact that should have been addressed at the hearing, specifically that certain transfers identified in the accounting were not accurate and might have been fraudulent. For example, respondents contended that the trust purchased a house for Sandra and that it was of equivalent value to the Corktown properties transferred to her siblings. In actuality, the house was originally titled in Evelyn's name and later in the name of Evelyn and Sandra's two children; Sandra never held a propriety interest. But the forensic accounting appears to count $59,000 in repairs made to the house as cash transfers to Sandra. Sandra also presented an affidavit claiming that certain checks written to J.L. Hengy were not used to pay off loans owed by Thomas as the accounting asserted, but rather went toward repairs made to the home in which she lived. Moreover, Sandra claimed that she assigned more than $60,000 in insurance proceeds to Evelyn to cover these repairs. That $60,000 was never deposited into the trust and therefore no repairs should have been paid from the trust, Sandra contended. The probate court ignored this evidence despite having ordered the forensic accounting that revealed it. Instead, the court pointed to trust language allowing Evelyn to dispose of trust property without mentioning that the accounting did not match Evelyn's version of events.

Petitioners also presented evidence that Mikhail was managing the trust's business, not Evelyn or Melanie. Sandra attested that "the handwritten Check Register provided as part of Respondents['] accounting" was in Mikhail's handwriting. If Mikhail was actually running the businesses and properties held by the trust, this could create a fiduciary relationship, a fact relevant to petitioners' undue influence claim.

Ultimately, the probate court sua sponte approved the accounting and dismissed petitioners' bids to remove the trustees and return property to the trust without a hearing. Petitioners had no "opportunity to respond to the probate court's sua sponte raising of the issue," making *Baldwin*, 274 Mich App at 399, inapposite. The court failed to consider the evidentiary contest before it and improperly dismissed the petition.

### III. UNDUE INFLUENCE

Not only did the probate court prematurely dismiss petitioners' undue influence claim without a motion and without a hearing, but the court also improperly dismissed the case in the face of conflicting evidence that created a genuine issue of material fact. Had the court conducted these proceedings in the courtroom so that a record could have been created, this error may have been apparent earlier.

A presumption of undue influence arises when there is evidence of (1) a confidential or fiduciary relationship between the grantor and a fiduciary, (2) the fiduciary or an interest he represents benefits from a transaction, and (3) the fiduciary had an opportunity to influence the grantor's decision in that transaction. *Kar v Hogan*, 399 Mich 529, 537; 251 NW2d 77 (1976), overruled on other grounds in *In re Estate of Karmey*, 468 Mich 68; 658 NW2d 796 (2003). When the presumption is established, the party seeking to enforce the trust must offer other evidence to rebut the presumption. *Id*. at 542.

The probate court stated, "[P]etitioners wholly fail to allege, address, or establish the existence of a fiduciary or confidential relationship." Although petitioners' briefs and pleadings were not artfully drafted, petitioners did allege that Mikhail was Evelyn's fiduciary, and presented evidence tending to establish a fiduciary relationship. "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one upon the judgment and advice of another." *Vicencio v Ramirez*, 211 Mich App 501, 508; 536 NW2d 280 (1995). Petitioners presented evidence that Evelyn had placed her trust in Mikhail to manage the trust and its assets for her. Mikhail created the trust account's ledger, Evelyn instructed the bank to include Mikhail as a designated signor on the trust's account, and Mikhail signed checks from the trust. Petitioners presented a property listing for certain trust property and alleged facts tending to show that Mikhail was tasked with the property's sale. If these facts are proven, they tend to establish that Mikhail acts as Evelyn's agent, "a person having express or implied authority to represent or act on behalf of another person." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, ___ Mich App ___; ___ NW2d ___ (Docket No. 338997, issued January 15, 2019), slip op at 6. An agency is a fiduciary relationship. *Id*. at 6-7. Contrary to the probate court's opinion, petitioners did not rely solely on the "mother-son relationship."

Petitioners also presented evidence that Mikhail had benefited from trust transactions he managed. Respondents and the court look only at the 2007 transfer of properties from the trust to Evelyn's children when disputing this element. However, petitioners alleged that several checks signed by Mikhail and described as "owners draws" were actually monies used to repair buildings owned by Mikhail's separate companies, although they presented no proof in this regard. Petitioners did present evidence of other potential fraud in the accounting. If Mikhail was in charge, he would have committed those frauds. Although the evidence is slimmer on this element, there was enough to challenge a premature summary disposition entered with no hearing.

Petitioners further supported that Mikhail had the opportunity to influence Evelyn. It is unclear why Evelyn chose to live with Mikhail and his wife (or at least in an apartment attached to Mikhail's house). Petitioners claim that Evelyn is dependent on Mikhail for transportation and that he holds her captive, that Mikhail controls the flow of funds to Evelyn, and that Evelyn

has complained to them that she does not have any spending money. Petitioners were unable to depose Evelyn to flesh out these charges. As the court prematurely dismissed this case, the inadequacy of evidence in this regard could also potentially be remedied.

Petitioners contend that on the two occasions that Evelyn and Mikhail had appeared together in court, Evelyn expected Mikhail to answer any questions posed to her. This was further evidence of Mikhail's sway over Evelyn, petitioners contend. Unfortunately, these occasions were not captured in the record. We have no way to know what questions were asked or whether Evelyn made any response. As this Court once noted in a case involving a child protective proceeding, a court's decision to consider interviews in camera "result[s] in an inadequate record for meaningful judicial review at the appellate level." *In re HRC*, 286 Mich App 444, 457; 781 NW2d 105 (2009). The same is true here.[2]

We vacate the probate court's summary dismissal of petitioners' undue influence claim and on remand order the probate court to conduct the remainder of the proceedings on the record.

## IV. DENIAL OF DISCOVERY

Finally, petitioners contend that the probate court improperly denied their request to depose Evelyn so they could investigate whether Mikhail unduly influenced her property transfers. We review for an abuse of discretion a lower court's decision whether to allow discovery. *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998).

"The general discovery rules apply in probate proceedings" and "[d]iscovery for civil actions in probate court is governed by subchapter MCR 2.300." MCR 5.131. Pursuant to MCR 2.306(A)(1), one party "may take the testimony of a person, including a party, by deposition" after an action is commenced. Petitioners did not pursue discovery by written notification or by requesting a subpoena in writing. See MCR 2.305; MCR 2.306(B). However, a party may make any motion orally at a court hearing. See MCR 2.119(A)(1).

Petitioners assert that they made an oral motion to depose Evelyn at more than one off-the-record, in-chambers "hearing" before the probate court. As the court made no record of these proceedings, we cannot verify the accuracy of this statement, let alone review the court's decision. As we are vacating the summary dismissal of petitioners' undue influence claim and remanding for further proceedings to be conducted on the record, petitioners may again seek to depose Evelyn.

---

[2] The attorneys also deserve a share of the blame for our inability to properly review this case. It is incumbent on counsel to insist on a record of critically important proceedings, even in the face of judicial disapproval or disagreement. A written motion to create a record might have avoided the need for this appeal.

We vacate in part and remand for further proceedings, conducted on the record, consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica